DILLON, Judge, concurring.
I concur based on the conclusion that we are bound by holdings of our Court in the first appeal of this case, reported at Premier, Inc. v. Peterson , 232 N.C. App. 601, 755 S.E.2d 56 (2014) (hereinafter " Premier I "). Specifically, we are bound by the narrow definition of "subscribe" only to mean "to agree to receive and pay for a periodical service[,]" (quoting Webster's Dictionary), and that the term connotes "an affirmative act by the recipient prior to receipt of the product or service." Id. at 608, 755 S.E.2d at 61 (emphasis added). We are also bound by the holding in Premier I that the evidence that had been "discovered" to that point in the litigation was not sufficient to create a genuine issue of fact, and remanded to give Defendant a chance to engage in discovery to uncover additional evidence. Defendant, however, has failed to point to any evidence that was "discovered" since the first appeal. Accordingly, we are compelled to affirm.
I note that in its definition of "subscribe," Webster's does not require an affirmative act which occurs prior to receipt of the product, as Premier I suggests. Webster's lists other definitions for "subscribe"
*356 as well, such as to "sanction" and to "assent to." Here, I believe that the term "subscribe" is sufficiently ambiguous to include Hospital Sites within networks where the network had a contract with Premier but where the Hospital Site received the product, but then implemented the product-where the inputting of patient data and other acts to implement the product constitute affirmative acts of "Product Implementation" to constitute "sanction[ing]" and "assent[ing] to" the product. And perhaps the best evidence concerning the parties' intent in their use of the word "subscribe" was evidence of Premier's relationship with the Hospital Sites identified in Section 2(b)(iii) of the Disclosure Schedule of the agreement, in which the parties agreed where Product Implementation had occurred. For example, it would be interesting if some of the Sites that implemented the product which are listed as part of a network did not actually have a direct formal agreement with Premier but were included because they were part of a network which did have a formal agreement. But the record is silent on this issue.